**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
────────────────────────────────────────

**WANDA N.,**
                                        **Plaintiff**

        v.                                                      **6:21-cv-00358**

**COMMISSIONER OF SOCIAL SECURITY,**

                                        **Defendant.**
────────────────────────────────────────

**THOMAS J. McAVOY,**
**Senior United States District Judge**


### DECISION and ORDER

        Plaintiff Wanda N. ("plaintiff" or "claimant") brings this action pursuant to the Social

Security Act, 42 U.S.C. §  405(g), for review of a final determination by the Commissioner

of Social Security ("Commissioner" or "defendant") denying her applications for disability

insurance benefits (DIB), disabled widow's benefits (DWB), and supplemental security

income (SSI) benefits.  Plaintiff alleges that the Administrative Law Judge's ("ALJ")

decision denying her applications was not supported by substantial evidence and contrary

to the applicable legal standards.  Pursuant to Northern District of New York General

Order No. 8, the Court proceeds as if both parties had accompanied their briefs with a

motion for judgment on the pleadings.

**I.        PROCEDURAL HISTORY**

        On January 16, 2018, the claimant filed a Title II application for a period of disability

and disability insurance benefits. The claimant also filed a Title II application for disabled

widow's benefits on August 31, 2018. In addition, the claimant filed a Title XVI application

1

for supplemental security income on January 16, 2018.  In all applications, the claimant alleged disability beginning May 22, 2015 due to impaired vision and hearing, loss of her senses of smell and taste, high blood pressure, and "mental health."  These claims were denied initially on June 8, 2018. Thereafter, the claimant filed a written request for a hearing.

On April 30, 2020, ALJ Gretchen Mary Greisler held a hearing by telephone.  The claimant, represented by a non-attorney representative, appeared by telephone and testified.  A vocational expert, Marian Marracco, also appeared by telephone and testified. Following the hearing, the ALJ utilized the five-step process for evaluating disability claims and found that plaintiff was not disabled from her alleged onset date through the date of the decision, July 17, 2020, because she could perform jobs existing in significant numbers in the national economy.

In February 2021, the Appeals Council denied plaintiff's request that it review the ALJ's decision, making that the Commissioner's final decision.  Plaintiff now seeks judicial review.  This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.    FACTS

The Court assumes familiarity with the facts and will set forth only those facts relevant to the Court's decision in the body of the decision below.

## III.    THE ADMINISTRATIVE LAW JUDGE'S DECISION

As indicated, the ALJ engaged in the five-step analysis required by 20 C.F.R. § 416.920(a) to determine whether the claimant qualified for disability benefits.  At Step 1,

2

the ALJ concluded that plaintiff had not engaged in substantial gainful activity since May 22, 2015, the alleged onset date. Tr. at 13.  At Step 2, the ALJ found that plaintiff has the following severe impairments: post-traumatic stress disorder (PTSD); personality disorder; vision impairment status-post cataract surgery; and hearing impairment.  *Id.*  The ALJ also found that there were non-severe impairments of hypertension and substance abuse disorder that did not result in significant work-related functional limitations.  *Id.*  At Step 3, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).  *Id.* at 13-15.

Between Steps Three and Four, the ALJ assessed Plaintiff's residual functional capacity (RFC).  The ALJ found:

> [T]hat the claimant has the residual functional capacity to perform work at all exertional levels but with the following nonexertional limitations: can perform work not involving fine, close-up tasks involving small objects or requiring binocular vision, but retains sufficient visual acuity to work with larger objects and avoid workplace hazards; should not work in a noise environment greater than moderate as defined in the DOT, but retains the ability to hear and understand simple, oral instructions and to communicate simple information; can perform simple tasks at a consistent pace but not at a fast production-rate pace such as would be experienced in assembly line type of work; and can tolerate occasional contact with supervisors, coworkers and the public, can make simple decisions and tolerate minor changes.

*Id.* at 15.  The ALJ explained the bases for her RFC finding and the evidence she considered.  *Id.* at 15-19.  At Step 4, the ALJ concluded that the claimant was unable to perform any past relevant work.  *Id.* at 20.

At Step 5, the ALJ considered the claimant's age, education, work experience,

RFC, and the testimony of a vocational expert and concluded that there were jobs that existed in significant numbers in the national economy that the claimant could perform. *Id.* at 20-21.  In this regard the vocational expert testified that the jobs that existed in the national economy in sufficient number for an individual with the claimant's age, education, work experience, and RFC were (1) cleaner, industrial (DOT #381.967-014), (2) office cleaner (DOT #323.687-014), and (3) checker (DOT #369.687-014).  Ultimately, the ALJ found that the claimant had not been under a disability, as defined in the Social Security Act, from May 22, 2015 through the date of that decision, July 17, 2020. *Id.* at 21.

## IV.    STANDARD OF REVIEW

"District courts review a Commissioner's final decision pursuant to 42 U.S.C §§ 405(g) and 1383(c)(3), and 'may only set aside a determination by the Commissioner if it is based on legal error or not supported by substantial evidence in the record.'" *Hill v. Comm'r of Soc. Sec.*, No. 1:19-CV-5096 (ALC), 2020 WL 5768726, at *5 (S.D.N.Y. Sept. 28, 2020)(quoting *Cole v. Colvin*, 12-cv-8597, 2014 WL 1224568, at "*2 (S.D.N.Y. Mar. 24, 2014)).  A Commissioner's finding will be deemed conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *see also Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)("It is not the function of a reviewing court to determine *de novo* whether a Plaintiff is disabled.  The [Commissioner's] findings of fact, if supported by substantial evidence, are binding.")(citations omitted).  In the context of Social Security cases, substantial evidence consists of "more than a mere scintilla" and is measured by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated*

*Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see Grant v. Colvin*, No. 14-CV-7761, 2016 WL 1092685, at \*3 (S.D.N.Y. Mar. 21, 2016)("The Second Circuit has defined substantial evidence as 'more than a mere scintilla, and as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'")(quoting *Bushey v. Colvin*, 607 F. App'x 114, 115 (2d Cir. 2015))(citation and internal quotation marks omitted).  Where the record supports disparate findings and provides adequate support for both the Plaintiff's and the Commissioner's positions, a reviewing court must accept the ALJ's factual determinations. *See Quinones v. Chater*, 117 F.3d 29, 36 (2d Cir. 1997)(citing *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)); *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990).  Although the reviewing court must give deference to the Commissioner's decision, a reviewing court must bear in mind that the Act is ultimately "'a remedial statute which must be 'liberally applied;' its intent is inclusion rather than exclusion.'" *Vargas v. Sullivan*, 898 F.2d 293, 296 (2d Cir. 1990)(quoting *Rivera v. Schweiker*, 717 F.2d 719, 723 (2d Cir. 1983)).

"However, this 'deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law.'" *Kenneth H. v. Commr. of Soc. Sec.*, 6:21-CV-324, 2022 WL 2954364, at \*3 (N.D.N.Y. July 26, 2022)(quoting *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003)). "Thus, 'where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards,' the decision should not be affirmed." *Id.* (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)). "This is so regardless of whether or not the decision is otherwise supported by 'substantial evidence.'" *Id.* (citing *Johnson*, 817 F.2d at 986).

## V.   DISCUSSION

### a.  Failing to Properly Assess Plaintiff's Hearing Impairment

Plaintiff argues that the ALJ erred in addressing her hearing impairment in the RFC and in the hypothetical questions posed to the VE.  Plaintiff first contends that the ALJ erred in finding that plaintiff "should not work in a noise environment greater than 'moderate' as defined in the DOT."  Plaintiff maintains that the "evidence supports a limitation to 'quiet' work environments," and points out:

> Social Security's Consultative Examiner [Dr. Rita Figueroa] opined that the claimant has "difficulty being in environments that have a lot of background noise. She will also have moderate difficulty answering phones" (Tr. 510). Additionally, the claimant's examining audiologist [Dr. Rebecca Falk ] states "This may cause general conversation, loud speech, and some environmental sounds to be very soft or entirely inaudible. Speech understanding may be particularly troublesome when trying to communicate, the presence of background noise, when the speaker is at a distance, or when the conversation is not face-to-face." The audiologist further recommended that the claimant "utilize strategies for improving speech understanding (i.e.,encourage face-to-face conversation, reduce background noise, enhance room lighting, etc.)." (Tr. 863).

Pl. Br. at 14.  Thus, plaintiff contends, "[t]he evidence of record is consistent with a limitation to a 'quiet' work environment." *Id.*

The Commissioner counters that the ALJ properly evaluated plaintiff's hearing loss. Def. Brief at 7-9.  The Commissioner points out that in response to the ALJ's question about her hearing loss, plaintiff testified that:

> It's white noise...too many people talking at one time. I get distracted and I can't stay focused on one person. I'm listening to everybody else in fact. I can't listen to anything too loud, too much of it so flustered with people and that goes for music. Sometimes I have to take [my hearing aid] off. Even...walking sometimes I have [to] take it off and if I'm in a crowd, it's [an] event or something[.]"

Tr. 63.   The Commissioner maintains that the ALJ properly found that plaintiff "should not work in a noise environment greater than moderate as defined in the DOT, but retains the ability to hear and understand simple, oral instructions and to communicate simple information." Tr. 15.  As the Commissioner points out, according to the DOT, a moderate noise environment can be found in a "business office where type-writers are used; [a] department store; [a] grocery store; [in] light traffic; [or at a] fast food restaurant at off-hours." Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, Appendix D, Environmental Conditions.  By contrast, a quiet noise environment is one typically found in a "library; many private offices; [a] funeral reception; [a] golf course; [or an] art museum."  *Id.*  The Commissioner further points out that in support of the limitation of a moderate noise level or lower, the ALJ cited the following evidence:

> • Plaintiff having 92% word recognition in her right ear in October 2015. (Tr. 17 citing Tr. 433).
>
> • Plaintiff having an extremely positive response to receiving a new hearing aid in February 2016. (Tr. 18 citing 447).
>
> • Plaintiff having excellent word recognition in her left ear and good word recognition in her right in June 2017. (Tr. 18 citing Tr. 432).
>
> • Plaintiff having excellent word recognition in both ears in May 2019. (Tr. 18 citing Tr. 863).

Moreover, the Commissioner argues, the evidence cited by plaintiff does not undermine the ALJ's decision. The Commissioner contends:

> For instance, plaintiff argues that Dr. Rita Figueroa "opined that [she] ha[d] 'difficulty being in environments that have a lot of background noise. She will also have moderate difficulty answering phones.'" ([Pl. Brief] at 14 citing Tr. 510). But plaintiff completely fails to clarify how any of this is inconsistent with a moderate noise environment. Plaintiff also references a statement

> from her audiologist that her hearing issues "may cause general conversation, loud speech, and some environmental sounds to be very soft or entirely inaudible. Speech understanding may be particularly troublesome when trying to communicate in the presence of background noise, when the speaker is at a distance, or when the conversation is not face-to-face." ([Pl. Brief] at 14 citing Tr. 863). But that was based on the results of audiology testing that plaintiff underwent without a hearing aid. (Tr. 863) ("Here for testing to see if lost hearing aid can be replaced"). Two months later, plaintiff received a hearing aid and stated that "everything sound[ed] good and clear." (Tr. 866).

Def. Brief at 9.

As the Second Circuit has explained, under the "'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder *would have to conclude otherwise*.'" *Bonet ex rel. T.B. v. Colvin*, 523 Fed. Appx. 58, 59 (2d Cir. 2013)(unpublished)(quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012)(emphasis in original; internal quotation marks omitted). While reasonable minds could find that plaintiff requires a quiet noise work environment, "whether there is substantial evidence supporting [plaintiff's] view is not the question here; rather, [this Court] must decide whether substantial evidence supports *the ALJ's decision*." *Id.* (emphasis in original)(citing *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) ("If there is substantial evidence to support the [agency's] determination, it must be upheld."); *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012)(limiting our review to "determining whether the SSA's conclusions were supported by substantial evidence.")). Here, based on the evidence cited by the Commissioner, and taking into account the parties' arguments, the Court finds that the ALJ's conclusion that plaintiff could work in a moderate noise level environment is supported by substantial evidence. Thus, to the extent that plaintiff contends that the ALJ erred in finding that plaintiff could work in a

moderate level noise environment, the appeal is denied.

Plaintiff also argues:

> When asked a hypothetical question that limited work [to] jobs that required only moderate noise levels, the Vocational Expert ultimately named only two medium exertional level jobs that required a tolerance for "moderate" or less noise levels, and one light exertional level job as an office cleaner. When asked if a reduction to a "quiet" noise environment, the VE stated that only the "office cleaner" job would still remain. However, the VE then contradicted herself by indicating this position required a tolerance for "moderate" noise levels.(Tr. 66-71).  As indicated previously in this brief, the office cleaner job was a light exertional level. Even if this occupation was available to this plaintiff, the plaintiff would be found disabled under the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2 § 202.06 as the plaintiff was of advanced age as defined in the Social Security Act.

Pl. Br. at 15.

Plaintiff's argument in this regard is without merit.  First, to the extent plaintiff is arguing that the office cleaner occupation is a low noise level position and the only position she would be qualified for under her analysis of the evidence, the Court finds that substantial evidence supports the ALJ's determination that plaintiff can work in a moderate or lower noise environment.

Second,  § 202.06 of the Medical–Vocational Guidelines, commonly called "the Grids," directs a finding of disability when a plaintiff is of advanced age, can only perform light work, has a high school diploma, and previous work experience was skilled or semiskilled. *See Pennock v. Commr. of Soc. Sec.*, 7:14-CV-1524 (GTS/WBC), 2016 WL 1128126, at *10 (N.D.N.Y. Feb. 23, 2016), *rep. rec. adopted*, 2016 WL 1122065 (N.D.N.Y. Mar. 22, 2016)(citing 20 C.F.R. Part 404, Subpt. P, App. 2 at § 202.06).  Here, the ALJ acknowledged that plaintiff was of advanced age as defined by the Social Security Act (plaintiff was 55 years of age on the alleged disability onset date), and had at least a high

school education. Tr. 20.  The ALJ found that plaintiff could work at all exertional levels but with certain nonexertional limitations, Tr. 15, *see id.* at 20, and the vocational expert testified that plaintiff's past work was unskilled. Tr. 66.  Thus, the ALJ assessed plaintiff's ability to adjust to other work under section 204.00 of the Grids. *See* Tr. at 20.  Because plaintiff has not challenged the ALJ's determination as to plaintiff's exertional capabilities, and because plaintiff's prior work was at the unskilled level, plaintiff's reliance on § 202.06 of the of the Grids is misplaced.

The appeal on these grounds is denied.

### b. Failing to Properly Assess and Weigh the Medical Evidence

Next, plaintiff argues that the ALJ erred in failing to properly assess and weigh the medical evidence.  Plaintiff contends that "the opinions of treating source Melnick, NPP, possesses certain qualities that elevate them above the state agency and consultative sources." Pl. Brief, at 16.  Plaintiff argues that "the ALJ ignored the evidence in the records from Community Health and Behavioral Services[1] that were supportive of the opinions expressed by psychiatric nurse practitioner Melnick.  Instead of addressing the comments in nurse Melnick's office notes . . ., the ALJ merely [makes a] blanket statement that nurse practitioner Melnick's opinions are not persuasive because they are not consistent with objective findings and course of treatment." *Id*. at 18.  Plaintiff further argues:

> The ALJ never explains in what manner these opinions are inconsistent with objective findings or course of treatment. In fact, the ALJ never points to any objective findings that contradict the opinions of nurse practitioner Melnick.

---

[1]Community Health and Behavioral Services is where Nurse Practitioner Melnick and other medical professionals treated plaintiff for her mental health issues.

The ALJ also noted that nurse practitioner Melnick's opinions are not
consistent with the claimant's activities without specifying the activities that
are inconsistent.

*Id*. at 18-19.

While Plaintiff acknowledges that this case is governed by new regulations for

evaluating medical opinions for claims filed after March 27, 2017, she nonetheless argues

that "the Treating Physician Rule remains applicable despite the conceptual change from

an assessment of weight to that of persuasiveness." *Id*. at 16.  She contends that "[t]he

factors listed in section c(3) of 20 CFR 404.1520c point toward a finding of greater

persuasiveness for the treating opinions: Length of the treatment relationship; Frequency

of examinations; Purpose of the treatment relationship; Extent of the treatment

relationship; and Examining relationship." *Id*. at 16-17.  Plaintiff maintains that "[a]lthough

the reference to controlling weight is now inapplicable, the opinions of the treating sources

should have been found more persuasive as they were well supported by the medically

acceptable clinical and laboratory diagnostic techniques and are consistent with the other

substantial evidence of record." *Id*. at 17-18.   Plaintiff acknowledges that the ALJ need

not discuss all evidence presented, but argues that at the same time the ALJ cannot

ignore evidence favorable to the plaintiff and pick only the evidence that supports the

ALJ's conclusion. *Id*. at 18.

### Analysis

For claims made after March 27, 2017, as is the case here, the ALJ is to consider

the opinion evidence pursuant to the rules stated in 20 C.F.R. §§ 404.1520c and

416.920c.  Under these regulations, the Social Security Administration "will not defer or

give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding[s], including those from your medical sources." 20 C.F.R. § 404.1520c(a).  The Administration applies factors laid out in 20 C.F.R. §§ 404.1520c(c)(1)-(c)(5) in evaluating such opinions.  *Id.*  Those factors consider the medical opinion's:  "(1) supportability"; "(2) consistency"; the opinion author's "(3) relationship with the claimant," including the "length of the treatment relationship," "frequency of examinations," "purpose of the treatment relationship," "extent of the treatment relationship," and whether the opinion author examined the claimant; (4) the "[s]pecialization" of the opinion author; and (5) other relevant factors, such as the author's familiarity with the underlying evidence or the rules of the disability program.  20 C.F.R. §§ 404.1520c(c)(1)-(c)(5).

"Under the new regulations, the treating physician rule no longer applies." *James W. v. Kijakazi*, 2022 WL 685288, at \*3 (N.D.N.Y. Mar. 8, 2022)(quotation omitted). "Therefore, no special deference is given to the treating physician's opinion." *Id.; but see Jeremy B. v. Comm'r of Soc. Sec.*, No. 8:20-CV-818 (TWD), 2022 WL 798056, at \*8 (N.D.N.Y. Mar. 16, 2022).[2]  "The regulations explain that when 'evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings,' the "'most important factors ... are supportability ... and consistency.'" *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at \*1 (2d Cir. June 17, 2022) (summary order)(footnote omitted)(quoting 20 C.F.R. § 404.1520c(a)); *see Raymond M. v. Comm'r of Soc. Sec.*, No.

---

[2]("Despite that the treating physician rule found in prior regulations is inapplicable to this case, 'a recent survey of district court cases in the Second Circuit applying the amended regulations recognized many of the factors to be considered in weighing the various medical opinions in a given claimant's medical history are substantially similar.'")(citing and quoting *Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-502 (AJN)(KHP), 2021 WL 363682, at \*9 (S.D.N.Y. Jan. 29, 2021)(collecting cases))

5:19-CV-1313 (ATB), 2021 WL 706645, at *8 (N.D.N.Y. Feb. 22, 2021)("At their most basic, the amended regulations require that the ALJ explain her findings regarding the supportability and consistency of each of the medical opinions, 'pointing to specific evidence in the record supporting those findings.'")(citing *Jacqueline L. v. Commissioner*, No. 6:19-CV-6786, 2021 WL 243099, at *6 (W.D.N.Y. January 26, 2021)). "'Supportability' means '[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.'" *Celia A. B. v. Commr. of Soc. Sec.*, 5:21-CV-112 (CFH), 2022 WL 4225540, at *4 (N.D.N.Y. Sept. 13, 2022)(quoting 20 C.F.R. § 404.1520c(c)(1)); *see Andrea G. v. Commr. of Soc. Sec.*, 5:20-CV-01253 (TWD), 2022 WL 204400, at *4 (N.D.N.Y. Jan. 24, 2022) ("Under the supportability factor, the more a medical opinion or prior administrative medical finding is reinforced by 'relevant ... objective medical evidence and supporting explanations,' the 'more persuasive' it will be.")(quoting 20 C.F.R. § 404.1520c(c)(1), and citing *Carmen M. v. Comm'r of the Soc. Sec. Admin*, No. 20-CV-06532-MJR, 2021 WL 5410550, at *4 (W.D.N.Y. Nov. 19, 2021) ("The supportability factor asks how well a medical source supported their opinion(s) with objective medical evidence and supporting explanations.")).  "'Consistency' means '[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.'" *Celia A. B.*, 2022 WL 4225540, at *4 (quoting 20 C.F.R. § 404.1520c(c)(2)).

The regulations "require the agency to 'explain how [it] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [its] determination or decision.'" *Loucks*, 2022 WL 2189293, at *1 (quoting 20 C.F.R. § 404.1520c(b)(2))(alterations in original); *see Jeremy B.,* 2022 WL 798056, at *3 ("An ALJ is specifically required to 'explain how [he or she] considered the supportability and consistency factors' for a medical opinion.")(quoting  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)).  "Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion." *Tasha W. v. Commr. of Soc. Sec*., 3:20-CV-731 (TWD), 2021 WL 2952867, at *3 (N.D.N.Y. July 14, 2021)(citing 20 C.F.R.  §§ 404.1520c(b)(2), 416.920c(b)(2)). "However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5)." *Id.*  (citing 40 CFR  §§ 404.1520c(b)(3), 416.920c(b)(3).

"It is 'procedural error' for an ALJ to fail 'to explain how [he or she] considered the supportability and consistency of medical opinions in the record.'" *Celia A. B.*, 2022 WL 4225540, at *4 (quoting *Loucks*, 2022 WL 2189293, at *2 (finding error because the ALJ's discussion of the supportability and consistency factors consisted of a statement that an opinion was "inconsistent with the evidence of record during the relevant period."), and citing *Cassandra A. v. Kijakazi*, No. 3:21-CV-007 (ATB), 2022 WL 1597680, at *9 (N.D.N.Y. May 19, 2022)("The ALJ merely concluded that [an] opinion was 'supported by the medical evidence of record as a whole.' ... The ALJ's failure to explain his assessment

14

of the opinion was legal error.")(citing *Jaleesa H. v. Comm'r of Soc. Sec*., No. 1:20-CV-01180, 580 F. Supp. 3d 1, 9 (W.D.N.Y. Jan. 18, 2022)("[T]he ALJ did not *explain* anything - instead, he made a conclusory statement that [an] opinion was 'generally consistent and supportive,' without any explanation of how he assessed the opinion in connection with the consistency and supportability factors which, as explained above, is required by the new regulations"); *Melissa S. v. Comm'r Soc. Sec*, No. 5:21-CV-420 (DJS), 2022 WL 1091608, at *4 (N.D.N.Y. Apr. 12, 2022)("[T]he ALJ does nothing more than state that the opinion is inconsistent with the record but offers no explanation as to how that is true.")). "'[H]owever, an ALJ's procedural error in failing to explain how [she] 'considered the supportability and consistency of medical opinions in the record' does not necessarily preclude affirmance of the Commissioner's decision.'" *Id*. (quoting *John L. M. v. Kijakazi*, No. 5:21-CV-368 (BKS/TWD), 2022 WL 3500187, at *2 (N.D.N.Y. Aug. 18, 2022), in turn quoting *Loucks*, 2022 WL 2189293, at *2). "Rather, a court 'may affirm' despite procedural error 'where the ALJ's consideration of the relevant factors can be gleaned from the ALJ's decision as a whole.'" *Id*. (quoting *John L. M.*, 2022 WL 3500187, at *2 (citations omitted)).

In February 2019, Nurse Practitioner Melnick ("NP Melnick") submitted a Medical Source Statement (Mental) in which she opines that plaintiff has moderate to marked limitations in a number of functional abilities, including understanding and remembering simple instructions, carrying out simple instructions, maintaining attention/concentration for task, making simple work related decisions (indicating "unknown" in the margin), managing stress appropriately, functioning in a work setting at a consistent pace

(indicating "unknown" in the margin), and managing her own schedule/demonstrating reliability. Tr. 588.  NP Melnick also indicates that plaintiff has moderate limitations in interacting appropriately with others, and relating to authority figures. *Id.*  On the form where it asks whether plaintiff's impairments would likely produce "good days" and "bad days," NP Melnick wrote "struggles daily." *Id.*  Where the form asks what percentage of time in an 8 hour day would plaintiff likely be off task as a result of her psychiatric impairments, NP Melnick wrote: "has not been able to maintain consistent work." *Id.*  NP Melnick opines that plaintiff's impairment lasted or can be expected to last for a continuous period of at least 12 months, and where asked if plaintiff can manage benefits in her own best interest, NP Melnick indicates "maybe." Tr. 589.  NP Melnick also answered "yes" to  whether plaintiff's impairments are reasonably consistent with the symptoms and functional limitations described in the evaluation, and indicates that plaintiff has had monthly visits during the course of her treatment between October 26, 2015 and February 6, 2019. *Id.*  In the section of the form asking for the diagnosis, including response to treatment and prognosis, NP Melnick indicates that plaintiff "has significant trauma history" from past abuse, and "likely also has learning disabilities."  *Id.*  She also indicates that plaintiff "demonstrates consistent difficulty maintaining relationships, jobs, maintaining apartment, and making decisions." *Id*.  NP Melnick also indicates that plaintiff is "stable with meds & therapy but not advancing - likely functioning at her highest level. Requiring much support from clinic & case manager." *Id.*  NP Melnick also indicates that plaintiff "is pleasant & compliant and tries very hard to maintain stability" but "overwhelms easily with any change in routine/schedule." *Id.*

Regarding these opinions the ALJ wrote:

Treating nurse practitioner Melnick, N.P. is not persuasive, being not consistent with the objective findings, the course of treatment, or the claimant's activities. The nurse practitioner noted moderate to marked limitations in almost all evaluated areas of mental function, (Exhibit 14F, pages 3-4) apparently on the basis of "struggling daily" with the results of past physical and verbal abuse, but admittedly still able to remain "pleasant and compliant" and to be overall "stable" in general attained lifestyle; the practitioner also mentioned possible learning disability but admitted this was only a guess: "likely."

Tr. at 19.

Although the ALJ says that NP Melnick's opinions are "not consistent with the objective findings, the course of treatment, or the claimant's activities," the ALJ does not explain how she considered the supportability and consistency factors for NP Melnick's opinions.  The failure to specifically addressed these issues is procedural error.  *See Loucks*, 2022 WL 2189293, at *2 ("Here, the ALJ committed procedural error by failing to explain how it considered the supportability and consistency of medical opinions in the record. . . .  [T]he ALJ did not address [Dr. L. Hoffman's] opinion's supportability or explain how the opinion was consistent with the record, except to conclude that it was. Similarly, the ALJ did not address the consistency of Dr. Amanda Slowik's opinion except to say that 'it [was] inconsistent with the evidence of record during the relevant period.'").

The Commissioner argues that while the ALJ did not provide further analysis in this paragraph addressed to the supportability of NP Melnick's opinions or their consistency with other medical records or opinions, the ALJ noted in other portions of her decision that plaintiff:

• Received normal mental status examinations. Tr. 17 (citing Tr. 443, 797, 803).

• Had no complaints at times.  Tr. 17 (citing Tr. 463).

17

• Had: an ability to articulate thoughts and feelings, Tr. 17 (citing Tr. 463); only mild depression at times, Tr. 17 (citing Tr. 503); good insight and judgment, Tr. 17 (citing Tr. 504); an ability to handle basic activities with little change in routine or schedule, Tr. 17 (citing Tr. 646); coherent speech, Tr. 17 (citing Tr. 640); and good recent and immediate memory, Tr. 17 (citing Tr. 640).

Some of these citations apply to N.P. Melnick's treatment notes (Tr. 443, 463, 640, 646), two apply to treatment notes by another medical professional at Community Health and Behavioral Services where Melnick saw plaintiff (Tr. 797, 803), and two apply to the Psychiatric Evaluation completed by consultative examination evaluator Dante Alexander, Psy.D. (Tr. 503, 504). These citations do not necessarily constitute an explanation as to the supportability and consistency factors.

While the selected portions of plaintiff's treatment notes at Community Health and Behavioral Services tend to contradict NP Melnick's opinions in the Medical Source Statement, they are only a snapshot of plaintiff's treatment and do not take into account plaintiff's longitudinal mental health. Plaintiff argues that "[a]fter a couple of years of apparent improvement in her symptoms, the plaintiff's mental health disorder started taking a turn for the worse approximately in September 2017 and office notes demonstrate continued deterioration in her mental health condition," citing:

> • 9/17/2017: "Continues to be apparent patient is not as functional as she portrays or states, insights are fair at best, and remains angry at ex and community, needs frequent redirection, keeps repeating things are unfair, reiterates stories in fact she has told this writer many times but has no recall that we have already discussed these issues." (Tr. 478).

> • 3/29/2018: "[C]ontinues to misperceive or not understand social cues." "Continues to be apparent patient is not as functional as she portrays or states, insights are fair at best, and remains angry at ex and community." (Tr. 663).

> • 12/5/2018: "Since last visit patient states she still sad about her ex-husband's death and reports grief overwhelms her." (Tr. 639).

18

> • 12/5/018: "[T]hinking is logical and rational at a simple level if they become more complex such as managing multiple things at one time or budgeting, patient flounders. Decision making appropriate at a simple level." "[P]atient has persistent difficulty comprehending and expressing himself [sic] -unknown patient has learning disability, hearing and sight impaired, financial and residential stressors, has difficulty multitasking managing money and organizing. [L]imited supports, ex-husband died August 31, 2018-patient is on mortgage and deed and therefore initially disqualified for HUD benefits. [A]limony has ceased- has no income." (Tr. 640).

Pl. Br. at 8-9.

While these citations to the record may also be mere snapshots of plaintiff's longitudinal mental health, it is for the ALJ to explain whether the plaintiff's course of treatment with NP Melnick supports Melnick's opinions regarding plaintiff's longitudinal mental health. *See Loucks*, 2022 WL 2189293, at *2 ("[T]he ALJ focused on the fact that Loucks's mental status examinations were largely normal. These examinations, however, analyze the patient's mental state only at the time of the examination and do not consider symptoms the patient may experience outside of that brief period of time.")(citing *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019)("[A] one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health.")).  As the Second Circuit has stated, "[c]ycles of improvement and debilitating symptoms of mental illness are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Estrella*, 925 F.3d at 97  (cleaned up).   It was incumbent upon the ALJ to explain whether NP Melnick's opinions were supported by her treatment notes and medical assessments, and whether the opinions were consistent with the other relevant medical evidence in the record.  Having failed to

do this, the Court is unable to determine whether the persuasiveness determination is supported by substantial evidence. *See Elizabeth P. v. Commr. of Soc. Sec*., 3:20-CV-891 (CFH), 2022 WL 507367, at *7 (N.D.N.Y. Feb. 18, 2022);[3] *Tasha W.*,  2021 WL 2952867, at *7 ("In her wholesale rejection of Dr. Dean's opinion, the ALJ failed to explain how she considered the supportability and consistency factors in her evaluation, and therefore her conclusion is not supported by substantial evidence.").

Furthermore, the ALJ does not explain the consistency or inconsistency of NP Melnick's opinions with those of Dr. Alexander or other medical sources.

The Commissioner argues that the ALJ also discounted NP Melnick's opinion because it was inconsistent with plaintiff's activities.   With regard to plaintiff's activities, the ALJ wrote:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent with the entirety of the medical documentary evidence now in this record. In particular there is her quite wide range of regular daily activities. These require significant auditory/visual acuity and related mental demands. (See, for example, Exhibit 5E, p. 5)  She regularly attends church services and does crafts at home. (Exhibit 5E, p. 5) She goes to the movies. (Exhibit 10F, p. 2) She has

---

[3]("Although the ALJ found Dr. Jenouri's and Dr. Putcha's opinions to be 'partially persuasive' she did not explain what they relied on in coming to their conclusions—i.e., what supported their opinions. The ALJ's two-sentence synopsis regarding Dr. Jenouri's and Dr. Putcha's opinions run afoul of the requirements of the applicable regulations because it precludes the Court from undertaking meaningful review of the evaluation of the opinions. The ALJ determined that the record supported additional, greater, or more severe restrictions than either provider concluded. However, in failing to explain what records supported the conclusions, and what records did not, the Court cannot then determine whether the persuasiveness determinations are supported by substantial evidence.")(cleaned up)

been working out physically and lifting light weights. (Exhibit 20F, p. 23; see also Exhibit 6F, page 32.) She walks a few miles each day weather permitting. (Exhibit 20F, p. 23) She spent three weeks in New York City helping her brother. (Exhibit 6F, p. 25) She has been volunteering at a local program for senior citizens, daily from 8am-2pm. (Exhibit 20F, p. 23)[4] She does yoga exercises daily. (Exhibit 20F, p. 23) In late 2017 she was cleaning a house for three hours weekly for money for personal items.(Exhibit 6F, page 40)[5] About the same time she was volunteering at the food bank but took it upon herself to make some changes which offended the woman that runs the food bank; a friend explained this mistake to her, but she continues to misperceive or not understand social cues. (Exhibit 6F, page 40) A record from early 2018 shows her to be single, taking public transportation 60 miles to an evaluation, and she lives alone. The claimant reported she cooks three to four times a week, cleans seven days a week, does laundry once a month, shops seven days a week, showers once a week, and dresses herself seven days a week. The claimant also reported socializing with family and friends; she is close to her kids, brother, mother, and father. Hobbies and interests include movies, riding bikes, walking, and art. (Exhibit 9F) In February 2020 she was out snowmobiling with her boyfriend. (Exhibit 24F, page 10).

Tr. 18.

Plaintiff contends that she described some of her daily activities "based upon what she likes to do and would like to do if she did not have her disabling conditions." Pl. Br. at 19 (citing Tr. 277). There is no evidence supporting this view, so a reasonable person would not have to conclude that the ALJ's interpretation of plaintiff's daily activities was incorrect.

Plaintiff also argues that her daily activities shed no light on her ability to work. Pl. Br. at 19-20. Although the ALJ states categorically that these activities "require significant

---

[4]Plaintiff testified that she volunteered at a local program for senior citizens on Wednesdays from 9:00 AM to 3:00 PM and sometimes on weekends when the senior citizens attended events. However, the Commissioner points out that in one of plaintiff's treatment notes she indicates that she was "volunteering daily at the sharp program which is a program for senior citizens, she is there from 8 until 2 PM, helps prepare lunch, enjoys outings with them and is allowed to join in on classes." Tr. 658.

[5]The Commissioner notes that this was two hours weekly. *See* Tr. 478.

auditory/visual acuity and related mental demands," she does not state specifically which activities she is referring to or which activities demonstrate that plaintiff has the mental capability to engage in full-time employment.  While the activity of volunteering daily at a nursing home indicates that plaintiff has the physical capabilities to work on a regular basis, it does not necessarily show that plaintiff has the mental capabilities to hold down a steady job for an extended period of time especially in light of NP Melnick's statement that plaintiff's symptoms from her mental condition impair her ability to maintain long-term relationships, including a job. *See, e.g.*, *Loucks*, 2022 WL 2189293, at *2  ("And although the ALJ noted that Loucks reported engaging in some limited and sporadic part-time work and that she engaged in some daily living activities such as reading and playing games on her phone, these activities did not show that Loucks could hold down a steady job for an extended period of time.")(citing *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("[T]here is no evidence that [claimant] engaged in any of these activities for sustained periods comparable to those required to hold a ... job." (cleaned up)).  Further, while these activities either singularly or in combination may demonstrate the unsupportability or inconsistency of NP Melnick's opinions, the ALJ has not explicitly made this analysis and it is not for the Court to draw conclusions from the evidence. *See, e.g., Elizabeth P. v. Commr. of Soc. Sec.*, 3:20-CV-891 (CFH), 2022 WL 507367, at *13 (N.D.N.Y. Feb. 18, 2022)("The ALJ's reliance on plaintiff's activities of daily living to discount the medical opinions is especially problematic when it is viewed in combination with the insufficient review of the medical opinions under the consistency and supportability factors.").

For these reasons, the Court will remand this matter to allow the ALJ to more fully

explain the supportability and consistency factors as related to NP Melnick's opinions in the Medical Source Statement (Mental). *See Rivera v. Comm'r of the Soc. Sec. Admin.*, No. 19-CV-4630, 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020)("If the ALJ fails adequately to explain the supportability or consistency factors, or bases her explanation upon a misreading of the record, remand is required."), *rep. rec. adopted*, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021); *Johnathan W. v. Saul*, 6:19-CV-1242 (CFH), 2021 WL 1163632, at *6 (N.D.N.Y. Mar. 26, 2021)("[T]he Court concludes that the omission of any articulated reasoning concerning Dr. Thompson's opinions constitutes reversable error, as the ALJ failed to properly assess—as required pursuant to 20 C.F.R. 404.1520c—the opinions and underlying evidence of occupational limitations resulting from plaintiff's PTSD that Dr. Thompson discussed and upon which he based his ultimate determination of disability.")*; see also Nicole L. v. Kijakazi*, 20-CV-1576, 2022 WL 160274, at *8-9 (N.D.N.Y. Jan. 18, 2022)(noting that supportability includes an assessment of whether both relevant objective evidence and supporting explanations provided by the source support his or her opinion, and finding error where the ALJ "did not provide any explicit analysis of its supportability" as to one opinion).

**c. Failure to Properly Evaluate Plaintiff's Mental Impairment**

Plaintiff contends that the ALJ  committed reversible error in failing to properly evaluate her mental impairment and the resulting functional limitations as required by 20 C.F.R. § 404.1520a.  Plaintiff maintains that although "the ALJ does discuss certain criteria that constitute the 'special technique' set forth in 20 C.F.R. § 404.1520a, [s]he never actually follows the requirements of this section." Pl. Br. at 20-23.  Plaintiff maintains

that when discussing the four areas of functioning required by the special technique, the ALJ made no reference to the reports of any of the plaintiff's treating mental health care providers." *Id.* at 22.  This includes the treatment reports from NP Melnick and the other medical providers at Community Health and Behavioral Services.  *Id.*  The Commissioner counters that plaintiff suffered no harm by any error because the ALJ "gave plaintiff everything she asked for by finding her mental impairments severe at step 2." Def. Br. at 5. The Commissioner further argues that "even if she didn't, it's universally accepted that errors at step two are harmless, so long as the ALJ continues the evaluation to the residual functional capacity (RFC) stage and considers the impairment there." *Id*. at 6 (citations omitted).

Because the Court is remanding this matter for the ALJ to specifically assess the supportability and consistency factors to NP Melnick's opinions in the Medical Source Statement (Mental), and because that assessment could alter the ALJ's RFC determination, the Court declines to address this argument raised by plaintiff. *See Elizabeth P.*, 2022 WL 507367, at *15, n. 13 ("As remand is required, the Court does not reach plaintiff's remaining arguments concerning the ALJ's RFC and step-five determinations, and the alleged deficiencies in Dr. Kamin's opinion.")(citing *Devra B. B. v. Comm'r of Soc. Sec.*, No. 6:20-CV-00643 (BKS), 2021 WL 4168529, at *8 (N.D.N.Y. Sept. 14, 2021) ("Because the Court has determined that remand is required, the Court does not reach Plaintiff's remaining arguments.")).

VI.     **CONCLUSION**

**WHEREFORE**, for the reasons stated herein, it is hereby:

24

**ORDERED**, that plaintiff's Motion for Judgment on the Pleadings, Dkt. No. 11, is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED**, that defendant's Cross-Motion for Judgment on the Pleadings, Dkt. No. 14, is **GRANTED in part** and **DENIED in part**, and the matter is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), to the Commissioner for further proceedings consistent with this Decision & Order.

**IT IS SO ORDERED.**

Dated: September 22, 2022

Thomas J. McAvoy
Senior, U.S. District Judge